# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7764 | **DATE** | 6/12/2002 |
| **CASE TITLE** | Hill's Pet Nutrition, Inc. vs. Noble et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Plaintiff Hill's motion (Doc 42-1) for summary judgment in the amount of $130,000.00 is granted is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 13 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 65 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HILL'S PET NUTRITION, INC.,

        Plaintiff,

vs.

                                          00 C 7764

GEORGE NOBLE and AMERICAN
NATIONAL BANK and TRUST COMPANY
OF CHICAGO, as Trustee u/t/a/d August 9, 1994
and k/a/t/n 118644-02,

        Defendants.

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the court is Plaintiff Hill's Pet Nutrition, Inc. ("Hill's") motion for summary judgment. For the reasons set forth below, the motion is granted.

### BACKGROUND

The following facts are undisputed unless otherwise noted. Second Veterinary Companies of America, Inc. ("Secondary Veterinary") executed a Commercial Lease ("the Master Lease") with American National Bank and Trust Company of Chicago ("American National Bank") on May 22, 1995 for the lease of a property located at 500 East Kehoe Boulevard in Carol Stream, Illinois ("the Carol Stream property"). Second

Veterinary, which was a Hill's subsidiary, merged into Hill's effective June 30, 1996.[1] American National Bank was acting as trustee for Defendant George Noble ("Noble") who is the beneficial owner of the covered property. The Master Lease had a term of May 22, 1995 to May 21, 2000. In addition, Hill's executed a Guaranty of the Lease obligations of Second Veterinary ("the Guaranty"). At the time the lease was executed, Second Veterinary presented Noble with a security deposit of $130,000.00.

Hill's used the warehouse and office space on the subject property as a distribution center for its pet food products. Hill's occupied the building for less than a year and then subleased the property to The Pampered Chef under a Sublease Agreement ("the Sublease") dated March 14, 1996. The term of the Sublease was April 15, 1996 through May 21, 2000, the end of the Master Lease. As part of the Sublease, Hill's required that The Pampered Chef remit a security deposit to Hill's in the amount of one month's base rent, or $71,844.80. Noble signed the Sublease and consented to its terms.

In the spring, summer, and fall of 1996, before moving in, The Pampered Chef made major renovations to the property, including repairing and replacing the heating, ventilation, and air conditioning systems ("the HVAC systems"). Hill's claims The Pampered Chef never notified Hill's of the renovations or asked Hill's to pay for the renovations. Additionally, Noble did not inform Hill's of The Pampered Chef's work

---

[1] We refer to Secondary Veterinary and Hill's from this point on interchangeably, as the parties do.

on the HVAC system prior to July 2000. The Pampered Chef paid for the renovations in 1996.

In May 1996, Noble and The Pampered Chef entered into an Option Agreement for the lease by Noble to The Pampered Chef of the Carol Stream property. Noble and The Pampered Chef amended this Option Agreement in October 1997. In the Amended Option Agreement, The Pampered Chef agreed to a three year lease for the Carol Stream Property, with the option of renewing such lease for another five years. In addition, Noble agreed to reimburse The Pampered Chef $100,000.00 for the renovations to the HVAC system and other expenses. This reimbursement was in the form of a credit against rent of $20,000.00 in each of the first five months of the initial term of the lease. In the Amended Option Agreement, Noble expressed its intent to retain as much as possible of Hill's $130,000.00 security deposit and to pay The Pampered Chef half of Hill's security deposit to compensate The Pampered Chef for its improvements to the condition of the Carol Stream property.

Neither Noble nor The Pampered Chef informed Hill's of their agreement purporting to compensate The Pampered Chef for its renovations to the HVAC system on the Carol Stream property at that time. Noble did not inform Hill's of this agreement until July 2000, in response to Hill's June 2000 request for the return of its security deposit. At that time, Noble sent Hill's a notice of default and refused to return Hill's security deposit.

After the Sublease term ended, The Pampered Chef requested that Hill's return The Pampered Chef's security deposit of $71,844.80. This request was made by letter drafted by Rick Geu ("Geu"), the Executive Vice President of The Pampered Chef. Hill's has not yet returned The Pampered Chef's security deposit. Noble paid The Pampered Chef about $72,000 purportedly to reimburse The Pampered Chef for the security deposit The Pampered Chef had paid to Hill's. Hill's initiated this lawsuit on December 13, 2000. Hill's complaint alleges a breach of contract. He claims that Noble has violated the plain terms of the Master Lease by refusing to return Hill's $130,000.00 security deposit. Discovery has closed, and Hill's now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-

moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record--only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).

Additionally, the Seventh Circuit has recognized that "summary judgment isparticularly appropriate in cases involving the interpretation of contractual documents." Ryan v. Chromalloy American Corp., 877 F.2d 598, 602 (7th Cir. 1989) (citing Metalex Corp. v. Uniden Corp. of America, 863 F.2d 1331, 1333 (7th Cir. 1988)). In that context, "summary judgment should be entered only if the pertinent provisions of the contractual documents are unambiguous; it is the lack of ambiguity within the express terms of the contract that forecloses any genuine issues of material fact." Ryan, 877 F.2d at 602. "If a district court determines that the pertinent

provisions of the contract are unambiguous, it need not consider extrinsic evidence." Id. "At that point, the district court should proceed to declare the meaning of those provisions." Id. With these principles in mind, we turn to the issue before us.

## DISCUSSION

Hill's argues that summary judgment should be entered in its favor because, under the plain terms of the Master Lease, specifically ¶ 10,[2] Noble was required to return Hill's $130,000.00 security deposit within forty-five days after termination of the Master Lease. Hill's asserts that Noble can only withhold Hill's security deposit if Hill's had defaulted under the terms of the Master Lease and that Hill's has not defaulted. Noble argues that he is not obligated to return Hill's security deposit. We address the arguments Noble presents in support of this contention in turn.

---

[2] ¶ 10 of the Master Lease provides, in pertinent part:
> As additional security for the full and prompt performance by Lessee of all of its obligations under this Lease, Lessee shall upon execution of this Lease deliver to Lessor the amount of...$130,000...which sum may be applied by Lessor for the purposes of curing any default of Lessee under any of the terms, covenants and conditions of this Lease, after the applicable cure period has expired. Provided that Lessee is not in default under this Lease, Lessor shall, within forty-five (45) days following termination of this Lease, return to Lessee the Security Deposit or such portion thereof that has not been applied by Lessor in accordance with this Section 10.

First, Noble asserts that under ¶ 10 of the Master Lease he need not return Hill's full security deposit because Hill's did default under the Master Lease in that Hill's did not pay for the major renovations to the HVAC system completed by The Pampered Chef. Noble rests its argument that Hill's is liable for the renovations on a combination of provisions: (1) ¶ 20(A) of the Master Lease which requires the lessee to make certain repairs;[3] (2) ¶ 16(B) of the Master Lease which provides that Hill's may sublease Hill's interest in the property but will remain liable for the sublessee's failure to fulfill any obligations under the Master Lease;[4] and (3) the Guaranty Hill's executed. Noble

---

[3] ¶ 20(A) of the Master Lease provides in pertinent part:
Lessee covenants and agrees at Lessee's sole expense, to promptly perform...all repairs and maintenance...to keep...the Property at all times during the term of this Lease in good repair....The obligations of Lessee hereunder shall include, but shall not be limited to, the maintenance and repair of the plumbing, electrical, heating, cooling and ventilating systems and equipment serving the Property...; provided, however, that Lessee shall not be required to make any improvements or replacements which would constitute capital expenditures under Generally Accepted Accounting Principles (GAAP) to the extent such expeditures exceed Three Thousand ($3,000) Dollars per year per item or building component (the "Major Capital Repair(s)"). The cost of any Major Capital Repairs(s) shall be charged back to Lessee as Additional Rent as follows: [formula for Additional Rent].

[4] ¶ 16(B) of the Master Lease provides in pertinent part:
Lessee shall have the right to...sublease...its right, title and interest in the Property, provided such transferee...shall be bound by the terms, covenants and agreemetns set forth herein, and shall expressly assume and agree to perform the covenants and agreements of Lessee hereunder. In the event of any

contends that Hill's is liable for the HVAC renovations under these provisions interpreted either independently or together.

Hill's responds that Hill's was not obligated to pay for any of The Pampered Chef's renovations under any of these documents. Hill's states that it fulfilled its obligations under the Master Lease because Hill's completed certain repairs to the HVAC system before The Pampered Chef took possession. The invoices for those repairs are in the record. Further, Hill's contends that The Pampered Chef assumed Hill's obligations and covenants under the Master Lease, including Hill's obligation under ¶ 20 of the Master Lease to keep the Carol Stream property, including the HVAC system, in good repair.[5] Furthermore, The Pampered Chef agreed in its Sublease Agreement to take the property "as is" and further agreed that Hill's had no obligation

---

such...sublease...Lessee shall not be released from any liability hereunder with respect to that portion of Lessee's leasehold estate so assigned, subleased or transferred. Any other action on the part of Lessee shall be void and of no effect and shall constitute a default hereunder.

[5] ¶ 1 of the Sublease Agreement provides in pertinent part:
it is the expressed intent of the parties that Sublessee [The Pampered Chef] shall assume, discharge, and be fully bound by all of Subleasor's [Hill's] obligations and covenants under said master lease, except as may be expressly set forth herein to the contrary.

¶ 9 of the Sublease Agreement provides in pertinent part:
Sublessee shall, at its own expense, make all necessary repairs and replacements to the Leased Premises as required by Sections 15 and 20 of the master lease.

- 8 -

to complete any renovations.[6] Moreover, Hill's asserts that since The Pampered Chef fulfilled the obligations under the Master Lease by renovating the HVAC system, there can be no default or liability on Hill's part as to Noble.

We agree with Hill's that Hill's is not liable to Noble for the HVAC renovations under any of the provisions asserted by Noble or any combination of them. Hill's paid for some repairs to the HVAC system before turning the property over to The Pampered Chef. Noble consented to the Sublease. In that Sublease, The Pampered Chef assumed the obligation to repair the HVAC systems during the term of the Sublease. The Pampered Chef then proceeded not only to pay for some repairs, but to initiate major renovations to the HVAC systems, spending $182,257.00. The Pampered Chef, in 1997, sought reimbursement for the renovations from Noble. Neither The Pampered Chef nor Noble contacted Hill's about the renovations or reimbursement for them. Rather, The Pampered Chef and Noble decided, between themselves and without consulting Hill's, that Noble would reimburse The Pampered Chef for most of the costs

---

[6] ¶ 24 of the Sublease Agreement provides:
    It is understood and agreed by the parties that Sublessee has inspected the Leased Premises and accepts same "as is," and that Sublessee in executing and delivering this sublease is not relying upon, nor has Sublessor made and is not making any warranties, representations, promises or statements, expressed or implied, concerning the condition of the Leased Premises or its suitability for Sublessee's particular needs, except as expressly set forth in this sublease. Sublessee further acknowledges that Sublessor has no obligation to complete any remodeling, repairs, or maintenance on the Leased Premises.

associated with the renovations. This reimbursement was to take the form of $100,000.00 in rent reductions during the first five months of The Pampered Chef's new lease with Noble. Under ¶ 20(A) of the Master Lease, there is a formula for the lessor and the lessee to share the costs of such major renovations. Pursuant to the Sublease, The Pampered Chef assumed the lessee's obligations under this provision. Indeed, The Pampered Chef paid a significant share of the cost of those renovations. Any obligation on the part of the tenant to contribute to such renovations has been fulfilled. Although The Pampered Chef and Noble did not follow the formula laid in para 20(A), they nonetheless shared the costs pursuant to a separate, voluntary, and private agreement. There is no outstanding liability for the renovations. The HVAC systems are in good repair as required by the Master Lease; the obligation of the tenants to keep the HVAC systems in good repair has been fulfilled. Accordingly, we find that Noble cannot withhold Hill's security deposit based on any claim that Hill's is liable for the HVAC renovations.

Noble presents another reason for withholding Hill's security deposit. Because Hill's had not returned The Pampered Chef's security deposit upon the termination of the Sublease, Noble agreed to pay The Pampered Chef the amount of that security deposit. Noble's promise was memorialized in the Amendment of Option Agreement and Exercise Thereof executed by The Pampered Chef and Noble. Noble asserts that because Noble agreed to return The Pampered Chef's security deposit, Noble is entitled to retain at least an amount equal to the sum it paid The Pampered Chef out of Hill's

security deposit. Noble presents two bases for this argument. First, Noble argues that the Master Lease, Sublease, and the Guaranty, when read together, entitle Noble to do so. We disagree. None of the provisions in those documents cited by Noble states that Noble had a duty to give The Pampered Chef the amount it provided to Hill's as a security deposit. Nor does Noble cite to any applicable case law requiring it to do so under the circumstances of this case. Noble chose to do so voluntarily; there is nothing in the documents that control the relationships at issue requiring Noble to pay to The Pampered Chef its security deposit if Hill refused to do so.

Second, Noble asserts that in exchange for paying The Pampered Chef an amount equal to the security deposit The Pampered Chef made to Hill's, The Pampered Chef assigned its rights to such security deposit to Noble. There is, however, no evidence of such an assignment. There is a draft of an assignment in the record, but this draft is not signed. Moreover, The Pampered Chef representative who testified about this alleged assignment, Geu, testified that although he believed it was executed, he could not recall signing it. A signed copy of such assignment was never found during discovery. Thus, we find that the record does not support a conclusion that Noble had a valid assignment of The Pampered Chef's right to the security deposit it made with Hill's. Accordingly, we reject Noble's argument that it is entitled to withhold any of Hill's security deposit because Noble paid The Pampered Chef for its security deposit to Hill's.

Having considered the plain language of the controlling documents in this case, we find that Hill's is entitled to the return of its security deposit which Noble is

withholding. We note that Hill's has also requested attorneys fees. We direct Hill's to seek attorney's fees by a separate motion.

## CONCLUSION

For the foregoing reasons, Plaintiff Hill's motion for summary judgment is granted.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: June 12, 2002